UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| 1756 W. LAKE STREET, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 14 C 1869 |
| | ) | |
| AMERICAN CHARTERED BANK and | ) | |
| SCHERSTON REAL ESTATE | ) | |
| INVESTMENTS, LLC, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion for summary judgment by Defendants American Chartered Bank ("American Chartered") and Scherston Real Estate Investments, LLC ("Scherston") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

The following facts are derived from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Rule 56.1 ("Local Rule 56.1"). The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or assertion unsupported by the evidence in the record.

Plaintiff 1756 W. Lake Street, LLC ("Lake Street") is the physical location of the property at issue in this case, and also an Illinois limited liability company. Lake Street was the borrower of several loans made by American Chartered between October 2006 and April 2008. American Chartered is an Illinois banking corporation. Scherston is also Illinois limited liability company and an affiliate of American Chartered.

On October 25, 2006 ("Closing Date"), American Chartered and Lake Street executed a promissory note in which Lake Street would borrow $1,475,000 ("Original Note"). The Original Note was evidenced and secured by a mortgage in favor of American Chartered for real property located at 1756 W. Lake Street, Chicago, Illinois ("Property"), certain assignments of rents as to the Property, and personal guaranties from Lake Street's principals were also included in the transaction. Lake Street retained the deed to the Property on the Closing Date.

On April 21, 2008, Lake Street executed another promissory note in favor of American Chartered in the amount of $100,000 ("Note 2") (Original Note and Note 2 collectively referred to as "Loans"). On March 31, 2009, American Chartered and Lake Street, in conjunction with their affiliate 1800 W. Lake Street LLC, ("1800"), entered into a Forbearance Agreement ("Original Forbearance Agreement"). In accordance with the Original Forbearance Agreement, American Chartered agreed to forego enforcing their rights and remedies specified in the Loans. American Chartered agreed to extend the forbearance period through November 30, 2009.

A year later, on March 31, 2010, American Chartered and Lake Street, in conjunction with their affiliate 1800, entered into an Amended and Restated Forbearance Agreement ("A&R Forbearance Agreement").  Pursuant to the A&R Forbearance Agreement, American Chartered agreed to further extend the forbearance period through October 1, 2010, and if certain conditions were met, through October 1, 2011.  Additionally, as part of the A&R Forbearance Agreement, American Chartered agreed to make a new loan to Lake Street's affiliate, 1800, in the amount of $299,000, for the payment of past due real estate taxes on a specific commercial property owned by 1800.  Over the course of the next three and a half years the parties executed eight more amendments to the A&R Forbearance Agreement.

In August 2010, American Chartered and Lake Street, in conjunction with 1800, entered into a second amendment to the A&R Forbearance Agreement ("Second A&R Forbearance Agreement").  Pursuant to the Second A&R Forbearance Agreement, American Chartered agreed to make a new $350,000 loan to API Signs LLC, ("API"), an operating affiliate of Lake Street, provided that Lake Street gives American Chartered the deed for the Property to be placed in escrow, as collateral.  A deed in lieu of foreclosure agreement for the Property ("1756 Lake Street Deed Agreement") was entered into, specifying the events that would trigger American Chartered enforcing the 1757 Lake Street Deed Agreement.  The 1757 Lake Street Deed Agreement detailed the procedures American Chartered would take in the event

of forbearance. Specifically, American Chartered would take possession of the Property by recording the deed.

On March 30, 2011, American Chartered and Lake Street, in conjunction with 1800, entered into a third amendment to the A&R Forbearance Agreement ("Third A&R Forbearance Agreement"). The accommodations made in favor of Lake Street in the Third A&R Forbearance Agreement were numerous. The Third A&R Forbearance Agreement provided: (1) an extension on the maturity dates of the Loans and the note executed by 1800; (2) a provision that converted payments under certain notes to interest only absent a default, thereby reducing the monthly payment; (3) the amortization schedule of several notes to be extended, reducing the required monthly payments; (4) additional financing under the 1800 tax note; and (5) for decreasing the interest rate under the Note 2.

The next several amendments to the A&R Forbearance Agreement only dealt with extending the maturity dates on the numerous loans made by American Chartered. Between July 2011 and May 2012 American Chartered and Lake Street, in conjunction with 1800 executed the fourth, fifth, sixth, and seventh amendments to the A&R Forbearance Agreement. The seventh amendment to the A&R Forbearance Agreement extend the maturity date under the Note to June 1, 2012.

On July 31, 2012, American Chartered and Lake Street in conjunction with their affiliate, 1800, entered into their eighth amendment to the A&R Forbearance Agreement ("Eighth A&R Forbearance Agreement"). In the Eighth A&R

Forbearance Agreement, American Chartered agreed to: (1) further extend the maturity dates under all notes for one year, until July 31, 2013; and (2) extend the amortization schedule under all notes to allow for smaller required monthly principal payments.

On July 31, 2013, Lake Street and their affiliate 1800, amended the A&R Forbearance Agreement for the ninth and final time. The ninth amendment further extended the maturity dates under all notes until January 31, 2014. On October 1, 2013, Lake Street defaulted on their obligation under the A&R Forbearance Agreement. Pursuant to the terms of the A&R Forbearance Agreement, on October 15, 2013, American Chartered, through its affiliate, Scherston[1] recorded the deed with the Cook County Recorder of Deeds, in Chicago, Illinois ("Transfer Date"). The combined outstanding balance due under the Loans was approximately $1,517,506 as of October 18, 2013. In addition to the Loans, American Chartered made various loans to Lake Street's affiliates and principals totaling several million dollars, including nearly $2.3 million still outstanding as of the Transfer Date owed to American Chartered by Lake Street and its affiliates, 1800 and API.

On February 19, 2014, Lake Street filed for Chapter 11 bankruptcy in the Northern District of Illinois. On March 17, 2014, Lake Street filed a one-count complaint seeking to establish that Defendants' recording of the deed was a fraudulent

---

[1] Scherston, an affiliate of American Chartered, held the deed on American Chartered's behalf because the American Chartered's charter does not permit it to hold real estate.

transfer under 11 U.S.C. § 548 of the United States Bankruptcy Code ("Bankruptcy Code") and therefore should be avoided. On September 2, 2014, Defendants moved for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. *Id.* The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; he must go beyond the pleadings and support his contentions with proper documentary evidence. *Id.* The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Lake Street seeks to avoid the recording of the deed to the Property by American Chartered's affiliate, Scherston in October 2013. It asserts that the recording was a fraudulent transfer because reasonably equivalent value was not received. Lake Street, as the debtor, has standing to bring this adversarial proceeding pursuant to section 1107(a) of the Bankruptcy Code, which vests a debtor-in-possession the same rights, powers and duties of a trustee serving in a case under Chapter 11. 11 U.S.C. § 1107(a). Section 548(a)(1) of the Bankruptcy Code provides a stand-alone cause of action for the recovery of a fraudulent transfer that allows a bankruptcy trustee or debtor to avoid fraudulent transfers, including both those that were "infected by actual fraud" and those that were merely "constructively fraudulent." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 535 (1994). At issue in this case is the latter category, under which a debtor will prevail if it is proven that: (1) the transfer occurred on or within two years before the date of the filing of the petition; (2) the debtor "received less than a reasonably equivalent value in exchange" for the transfer; and (3) they were insolvent on the date of the transfer or became insolvent because of the transfer. 11 U.S.C. § 548(a)(1)(B). The parties do not address the first and third elements of establishing a constructive fraud claim. The parties only contest whether Lake Street received reasonably equivalent value in exchange for the transfer of the deed to American Chartered.

Determining "reasonably equivalent value" is a two-step inquiry. *Anand v. Nat'l Republic Bank of Chi.,* 239 B.R. 511, 516–17 (Bankr. N.D. Ill. 1999). A court must first determine whether the debtor received value, and then examine whether the value is reasonably equivalent to what the debtor gave up. *Id.* at 517. The second inquiry, whether what the debtor gave up was reasonably equivalent to what he received, is more difficult for the court to establish. *Id.*

### A. Lake Street Received Value

The parties have not addressed the requisite initial inquiry to determine if value was received by Lake Street. In the absence of argument by either party, the Court will decide if Lake Street received value in exchange for American Chartered's recording the deed to the Property, in October 2013. For the purposes of determining a fraudulent conveyance, value is defined as "property, or satisfaction or securing of a present or antecedent debt of the debtor . . ." *See* 11 U.S.C. § 548(d)(2)(A).

On the Transfer Date, the outstanding balance due for the Loans was approximately $1,517,506. Under the terms of the 1756 Deed Agreement, American Chartered had the right to record the deed in the event of a default. According the agreement between the parties, upon the proposed sale of the Property any proceeds American Chartered receives will be applied to the outstanding balance of Lake Street's Loans. Any excess funds, if any exist, will be applied to Lake Street's affiliates loans and any other loans cross collateralized with the Notes. Although the sale of the Property has not materialized, in part due to the initiation of this case, Lake

Street did in fact receive value at the time of the transfer. The prospective application of any proceeds of the sale of the Property to Lake Street's $1,517,506 outstanding balance is value for the purposes of section 548. Having determined that Lake Street did receive value, the Court will proceed with the second inquiry and determine if Lake Street obtained reasonably equivalent value from American Chartered.

### B. Lake Street Received Reasonably Equivalent Value

American Chartered argues that Lake Street received reasonably equivalent value for the conveyance of the deed to the Property when viewed in light of all the economic realities of the transaction. American Chartered asks the Court to consider the deed transfer as part of a larger economic relationship between the parties which spans multiple years, includes several properties and has seen numerous modifications to the parties' loan commitments. Conversely, Lake Street argues that the Court should relegate its consideration of reasonably equivalent value to strictly the submitted appraised value of the Property versus the value of the debt forgiven. Lake Street asserts that American Chartered received a property worth $1,720,000 in satisfaction for the debt of only $1,517,506. Lake Street concludes that American Chartered's windfall of more than $200,000 establishes that they did not receive reasonably equivalent value for the Property.

"Equivalent value must be measured as of the time of the transfer." *Baldi v. Lynch (In re McCook Metals LLC)*, 319 B.R. 570, 589 (Bankr. N.D. Ill. 2005). Whether "reasonably equivalent value" has been given is a question of fact that

depends on the circumstances surrounding the transaction. *Leibowitz v. Parkway Bank & Trust Co.* (*In re Image Worldwide LLC)*, 139 F.3d 574, 576 n. 2 (7th Cir. 1998). The factors utilized to determine reasonably equivalent value are: (1) whether the value of what was transferred is equal to the value of what was received; (2) the fair market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997); *Grigsby v. Carmell (In re Apex Auto. Warehouse, L.P.)*, 238 B.R. 758, 773 (Bankr. N.D. Ill. 1999). The determination of whether a debtor received reasonably equivalent value in exchange for a transfer does not require a dollar-for-dollar equivalency. *Barber*, 129 F.3d at 387. The trustee bears the burden of proof on this issue. *Id*.

At the outset it is important to note that the value of the Property is subject to differing opinions. Lake Street initially claimed that the Property was valued at $2,000,000, as reflected in their Chapter 11 filings and further in their Complaint filed in the case at bar. Now, Lake Street has supplied an appraisal for the Property which places a fair market value at $1,720,000. On the other hand, American Chartered has submitted an appraisal for the property with an "as is" market value of $1,300,000. In addition, American Chartered supplements its asserted valuation by an offer to purchase the Property for approximately $1,300,000 which was received after the Property was marketed for sale.

In *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), the Supreme Court considered the application of §548 in determining the relationship between fair market value and reasonably equivalent value in the context of a mortgage foreclosure. The Court noted that in many situations reasonably equivalent value means fair market value, so a court can evaluate whether a debtor received reasonably equivalent value by comparing the fair market value of the property lost to the amount that the debtor received from the transfer. *BFP*, 511 U.S. at 545 (the Court rejected fair market value as a benchmark in the context of mortgage foreclosures which are not in accordance with acquiring fair market value through a forced sale).

Determining a definite value for the Property based on dueling appraisal valuations is a purely theoretical exercise. The two different appraisals of the Property are based on recent sales of nearby comparable properties. This approach is deemed to be a well-accepted method of determining a properties valuation, but it is by no means a scientific procedure. *See Sidabras v. TCF National Bank (In re Sidabras)*, 13 B.R. 01201, 2014 WL 1682796 *2 (Bankr. N.D. Ill. 2014). It relies on subjective selection of "comparable" properties that have been sold and judgments to make adjustments in the sale price. *Id*. Appraisals of commercial properties are beneficial to ascertain a valuation range, however obtaining a definitive valuation requires submitting the Property to the market place where buyers at arm's length can determine the fair market value. Fair market value is defined as "the price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-

length transaction; the point at which supply and demand intersect." Black's Law Dictionary 1587 (8th ed. 2004). American Chartered has submitted evidence that the Property was marketed for sale and an offer was obtained. Lake Street does not rebut the legitimacy of the $1,300,000 offer to purchase the Property. Although *BFP* warns that fair market value cannot be obtained through a mortgage foreclosure sale, the Court finds that submitted offer to purchase was not based on the forced sale concerns present in *BFP*. Here, American Chartered obtained the deed of the Property after Lake Street's default on the Loans. Having the deed to the Property in escrow and immediately recording it upon Lake Street's default eliminated the drawn out foreclosure process which can yield depressed pricing for properties when sold. In consideration of American Chartered's appraisal, combined with an offer to purchase the property at $1,300,000, the Court concludes that the fair market value of the Property is $1,300,000. Based on the fair market valuation of the Property at $1,300,000, the Court finds that Lake Street did obtain reasonably equivalent value compared to Lake Street's outstanding balance of approximately $1,517,506.

Assuming arguendo that an accurate fair market value cannot be gained from the offer to purchase the Property, the Court will consider Lake Street's argument that the Court should only consider their submitted appraised valuation of $1,700,000 versus the loan amount forgiven. The obvious problem with Lake Street's narrow approach is that the limited comparison of the dollar amounts that changed hands does not reflect the totality of the economic realities of the October 2013 deed recording.

*See 4100 West Grand LLC v. TY Grand LLC*, 481 B.R. 444, 458 (Bankr. N.D. Ill. 2012). The record clearly indicates that over the time span of six years American Chartered worked to: (1) provide $750,000 in new loans to Lake Street or their affiliates; (2) extend forbearance periods for four and half years; (3) extend the maturity dates on the Loans nine times; (4) acquiesce to numerous interest rate reductions; and (5) provide amortization adjustments to lower payments.

Over the course of the American Chartered's relationship with Lake Street, American Chartered provided nearly $750,000 in additional financing to Lake Street and its subsidiaries. These new loans were incorporated into the existing A&R Forbearance Agreements, and were provided to assist Lake Street and its subsidiaries to pay delinquent tax debts and provide interim financing between forbearance dates. Not only did American Chartered provide additional loans, but they also worked to reduce the payments which Lake Street was obligated to make by manipulating amortization tables and lowering interest charges. Additionally, it is worth noting that only reason the deed to the Property was held in escrow by American Chartered's affiliate, Scherston, is due to its inclusion as collateral for the August 2010 loan to API totaling $350,000.

Lake Street's failure to acknowledge American Chartered's assistance in advocating for a limited consideration of the value of the Property is glaring. The record is replete with numerous instances when American Chartered acted in good faith and amended the terms of the Forbearance Agreements to acquiesce to Lake

Street's financial needs. Thus, the Court finds that Lake Street received reasonably equivalent value for the transfer of the deed to American Chartered.

## CONCLUSION

For the aforementioned reasons, the Court grants Defendants' motion for summary judgment is granted.

_____
Charles P. Kocoras
United States District Judge

Dated:     10/9/2014